UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PRECIOUS PLATE, INC.,

                                Plaintiff,

        -vs-                                                        06-CV-546C

JOHN H. RUSSELL,

                                Defendant.

---

APPEARANCES:    WEBSTER SZANYI LLP (MICHAEL P. McLAREN, ESQ., and NELSON PEREL, Esq., of Counsel), Buffalo, New York, Attorneys for Plaintiff.

                         HARRIS BEACH PLLC (TERESA BROPHY BAIR, ESQ., of Counsel), Buffalo, New York, Attorneys for Defendant.

## INTRODUCTION

By order dated August 15, 2011, this case was transferred to the docket of the undersigned by order of the Hon. William M. Skretny, Chief Judge of the Western District of New York. In this action, plaintiff seeks to enforce the termination provisions of a split-dollar life insurance plan entered into between the parties. The case is currently before the court on the plaintiff's motion for summary judgment on its claims brought pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA") or, alternatively, its state law breach of contract claims. Defendant has cross-moved for summary judgment on his ERISA counterclaims (Item 33).

## BACKGROUND

This case was originally filed in New York State Supreme Court, Niagara County, and was removed to this court on August 16, 2006 (Item 1). Plaintiff sought a declaratory judgment that it was entitled to all rights, title, and interests in two life insurance policies, pursuant to contractual agreements between the parties. It also sought an order compelling defendant to transfer the policies to plaintiff (Item 1, Exh. 2). In his notice of removal, defendant stated that plaintiff's state law claim was pre-empted by ERISA, that the case arises under the laws of the United States pursuant to 28 U.S.C. § 1331, and is properly removable under 28 U.S.C. § 1441(b) (Item 1).

On August 21, 2006, defendant filed its answer and interposed five ERISA counterclaims (Item 3). Specifically, defendant alleged that plaintiff violated its fiduciary duty and failed to distribute a summary plan description and other plan documents as required by ERISA. Plaintiff filed its answer to the counterclaims on September 28, 2006 (Item 11).

On December 15, 2006, plaintiff filed a motion to amend the complaint by adding two ERISA causes of action (Item 16). That motion also included a motion for summary judgment and a motion to stay discovery pending the resolution of the summary judgment motion. On February 13, 2007, plaintiff filed a supplemental motion to amend the complaint to add a breach of contract claim (Item 17). In an order dated February 28, 2007, the Hon. William M. Skretny denied the motions without prejudice and instructed the plaintiff to move to amend the complaint in a single motion, and then to file a motion for summary judgment if appropriate. On the same date, plaintiff filed a

motion to amend the complaint to add the ERISA and breach of contract claims (Item 20).

In an order entered March 2, 2007, Judge Skretny granted the motion to amend the complaint (Item 22). The amended complaint was filed March 5, 2007 (Item 23). In the amended complaint, plaintiff set out five claims: declaratory judgment and specific performance pursuant to ERISA and state law, and breach of contract based on plaintiff's alleged failure to perform pursuant to a management services agreement ("MSA"). Defendant then filed, on March 30, 2007, an answer to the amended complaint with an amended counterclaim for breach of the MSA (Item 26). On April 5, 2007, plaintiff filed its answer to the amended counterclaim (Item 27).

On April 19, 2007, plaintiff filed this motion for summary judgment (Item 28). On April 20, 2007, it filed a separate motion to stay discovery pending the resolution of the summary judgment motion (Item 29). In an affidavit filed May 14, 2007, defense counsel stated that no fact discovery was necessary to respond to the motion and that defendant did not object to a stay of discovery (Item 31). Accordingly, Judge Skretny granted the motion for a stay of discovery (Item 32). Defendant filed its response to the motion on June 8, 2007, including a cross motion for summary judgment (Item 33), and plaintiff filed a reply memorandum on June 22, 2007 (Item 35). On July 5, 2007, defendant filed a sur-reply (Item 36). On July 16, 2007, Judge Skretny cancelled oral argument and determined that the motions would be taken under advisement (Item 36). The case was transferred to my docket by order dated August 15, 2011 (Item 38). For the reasons that follow, the plaintiff's motion for summary judgment is granted, and the defendant's cross motion is denied.

**FACTS**

Plaintiff is a New York corporation with its principal place of business in Niagara Falls, New York (Item 28, ¶ 1). At all relevant times, defendant was a Vice President and General Manager of the plaintiff corporation. He was responsible, among other things, for labor matters and employee benefits. In his 1989 application for life insurance, defendant reported an annual income of $200,000 and net worth of $750,000. *Id.,* ¶ 2.

In 1985, the parties developed a deferred compensation plan consisting of whole life insurance. This plan was not offered to any other employee of Precious Plate, Inc. (Item 28, ¶ 3). On September 16, 1985, defendant was issued a life insurance policy from New England Financial (Item 28, Exh. A). At the same time, he executed an "Assignment of Life Insurance Policy as Collateral" to Precious Plate (Item 28, Exh. B). The parties also concurrently entered into a split-dollar agreement[1] entitled "New England Financial #8123115$177,316 GDB" (hereafter "the 1985 plan") dated September 16, 1985. *Id.,* Exh. C. The split-dollar agreement was effective as of the policy date and stated that defendant had assigned the policy to the plaintiff corporation "as collateral for amounts to be advanced by the Corporation under this agreement . . . ." *Id.* Upon the death of the employee, the corporation agreed to "without delay, take whatever action is necessary and required of it to collect the proceeds of the Policy from the Insurance Company" and to pay $150,000 to the designated beneficiary. *Id.*

---

[1] A "split-dollar" life insurance plan is a funding arrangement between two parties whereby they share the premium payment and, generally, the cash value, the ownership of the policy, and the death benefits.

In June 1989, the parties implemented a second deferred compensation plan consisting of whole life insurance, again offered exclusively to defendant (Item 28, ¶ 8). Defendant was issued a life insurance policy effective June 16, 1989, and signed an assignment of the policy as collateral. *Id.*, Exhs. D, E.  On August 16, 1989, the parties entered into a split-dollar life insurance plan titled "New England Financial #8492177$117,008 GDB" (hereafter "the 1989 plan"). *Id.,* Exh. F.  The 1989 assignment and the corresponding split-dollar plan were identical in all material respects to the 1985 assignment and split-dollar plan. *Id.*

In the 1985 and 1989 assignments, defendant expressly agreed to "assign, transfer, and set over to" plaintiff the insurance policy and "all options, privileges, rights, title and interest therein and thereunder." (Item 28, Exh. B, E).  The parties further agreed that:

> without detracting from the generality of the foregoing, the following specific rights are included in this assignment and pass by virtue hereof:
>
> 1.  The sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity;
>
> 2. The sole right to surrender the Policy and receive the surrender value thereof at any time provided by the terms of the Policy . . . ;
>
> 3.  The sole right to obtain one or more loans or advances on the Policy . . . .

Item 28, Exhs. B, E.  Defendant reserved the right to collect any disability benefit and to designate and change the beneficiary.  *Id.* The assignment was "made and the Policy [was] to be held as collateral security for any and all liabilities" of the plaintiff corporation. *Id.*

The 1985 and 1989 split-dollar agreements both contain identical provisions specifying the parties' rights upon termination of defendant's employment. Article X of the 1985 and 1989 agreements provides that "this agreement will terminate upon termination of [defendant's] employment" (Item 28, Exhs. C, F). Article XI provides in pertinent part:

> [t]he Employee will, for the thirty (30) days immediately following the date on which termination occurs, have the right to obtain a release of the Assignment by paying to the Corporation an amount equal to the Corporation's Interest in the Policy. Upon such payment the Corporation will release its interest in the policy to the Employee.
>
> . . . .
>
> If the Employee fails to make either the payment provided for in the first paragraph . . ., the Employee agrees to transfer all of his right, title and interest in the Policy to the Corporation, by executing such documents as are necessary to transfer such right, title and interest to the Corporation as of the date of termination. The Corporation will thereafter be able to deal with the Policy in any way it may see fit.

*Id.*

Defendant retired, and his employment was terminated on December 31, 2005 (Item 28, ¶ 11). At the time, plaintiff had paid premiums on the two policies in the amount of $186,000, and defendant had paid $14,000. *Id.,* ¶ 10. Defendant did not make the required payment to plaintiff within 30 days of the termination of his employment, and has refused to execute the necessary documents to transfer his right and interest in the policies to plaintiff. *Id.,* ¶ 13.

In an affidavit in support of his cross motion for summary judgment, defendant stated that starting in 2003, he and plaintiff were involved in negotiations to amend the split-dollar agreements (Item 33, Att. 2). In June 2003, defendant agreed to amend one

of the plans to cap his portion of the death benefit at $173,426, with any increase in the benefit going to Precious Plate.  *Id.,* ¶ 16.  In July 2004, the parties executed the MSA, which provided for monthly payments to defendant over a 10–year period in exchange for unspecified services.  *Id.,* ¶ 17.  In the months prior to and after his retirement in December 2005, defendant was contacted by plaintiff regarding a possible agreement that would enable plaintiff to benefit from the increase in the face value of the policies.  *Id.,* ¶ 20.  Defendant resisted such an agreement as he was satisfied with the arrangement and "felt protected and comfortable with [his] benefits."  *Id.,* ¶ 21.  During this time, plaintiff refused to make payments to defendant pursuant to the MSA, in a further effort to pressure him into signing a side agreement.  *Id.,* ¶ 24.  In April 2006, defendant refused to attend a meeting with plaintiff's president and accountant.  *Id.,* ¶ 22.  On May 31, 2006, plaintiff's attorneys wrote to defendant to inform him that, because he failed to make an election under the termination provisions of the split-dollar agreement, he was required transfer all right, title, and interest in the policies to plaintiff.  *Id.,* ¶ 25.  Plaintiff never alerted defendant to the 30-day provision and never advised him that it would rely on the termination provision despite his "repeated inquiries regarding [his] rights and obligations under the Split-Dollar Agreements." *Id.,* ¶ 28.  Defendant states that he has, at all times, been willing and able to make an election under Article XI of the split-dollar agreement and fully reimburse plaintiff for the premiums paid.  *Id.,* ¶ 32.

## DISCUSSION

**1. Summary Judgment Standard**

Summary judgment is appropriate where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir. 2005) (internal quotation marks omitted).

The movant bears the burden of establishing that no genuine issue of material fact exists. *Vermont Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). The court "must resolve all ambiguities and draw all reasonable inferences against the movant." *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 (2d Cir. 2010) (internal quotation marks omitted).

"To survive summary judgment the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (internal quotation marks and emphasis omitted). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998). Moreover, "the existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion . . . ." *Powell v. Nat'l Bd. of Med. Examiners,* 364 F.3d 79, 84 (2d Cir.2004).

**2. Plaintiff's Motion for Summary Judgment**

Plaintiff argues that the 1985 and 1989 plans in this case are what are known as "top-hat" plans and are thus exempt from the fiduciary requirements of ERISA. It contends that the plans should be enforced according to the plain meaning of the language of the plan, and that defendant may not rely on plaintiff's alleged breach of fiduciary duty to excuse his failure to comply with the plan's termination provisions. Defendant contends that the plan is not a top-hat plan and is thus subject to the fiduciary requirements of ERISA.

ERISA's coverage provisions, 29 U.S.C. §§ 1003, 1051, 1081, and 1101, state that ERISA shall apply to any employee benefit plan, other than listed exceptions. One of these exceptions, the "top-hat" plan, is defined as: "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2). Top-hat plans are exempt from the participation and vesting provisions of ERISA, 29 U.S.C. §§ 1051-1061, its funding provisions, 29 U.S.C. §§ 1081-1086, and its fiduciary responsibility provisions, 29 U.S.C. §§ 1101-1114, though not from its reporting and disclosure provisions, 29 U.S.C. §§ 1021-1031, or its administration and enforcement provisions, 29 U.S.C. §§ 1131-1145. Top-hat plans are exempt from ERISA's substantive requirements "because Congress deemed top-level management, unlike most employees, to be capable of protecting their own pension expectations." *Gallione v. Flaherty*, 70 F.3d 724, 727 (2d Cir. 1995). Congress approved of a lesser level of regulation for top-hat plans "on the premise that the employer's top-level executives have sufficient influence within the institution to

negotiate arrangements that protect against the diminution of their expected pensions." *Id.* at 728; *see also Kemmerer v. ICI Americas Inc.*, 70 F.3d 281, 286 (3d Cir. 1995) ("Top hat plans . . . which benefit only highly compensated executives, and largely exist as devices to defer taxes, do not require such scrutiny and are exempted from much of ERISA's regulatory scheme."). In this case, defendant concedes that the plan was maintained exclusively for him, a highly compensated management employee, but argues that the plan is funded and thus not exempt from ERISA's fiduciary requirements.

The Second Circuit has held that a plan is unfunded where "'benefits thereunder will be paid . . . solely from the general assets of the employer.'" *Demery v. Extebank Deferred Compensation Plan (B)*, 216 F.3d 283, 287 (2d Cir. 2000) quoting *Gallione v. Flaherty*, 70 F.3d at 725. In *Miller v. Heller*, 915 F.Supp. 651 (S.D.N.Y. 1996)), the court held that the question a court must ask in determining whether a plan is unfunded is: "can the beneficiary establish, through the plan documents, a legal right any greater than that of an unsecured creditor to a specific set of funds from which the employer is, under the terms of the plan, obligated to pay the deferred compensation?" *Id.* at 660. Additionally, any determination of the "unfunded" status of a top-hat plan requires an examination of the surrounding facts and circumstances, including the status of the plan under non-ERISA law. *Id.*

In *Demery,* the plan was funded through the purchase of life insurance contracts on the participants and the proceeds were kept in a separate bank account. By its express terms, the plan provided that the benefits would be payable solely from the

general assets of the employer and that the employer's obligation under the plan "shall be that of an unfunded and unsecured promise of Employer to pay money in the future." *Demery,* 216 F.3d at 287. The court found that the plan participants had no greater right to the account than that possessed by an unsecured creditor and that the revenues from the insurance policies became part of the general assets of the employer. Accordingly, the court found that the plan was unfunded as a matter of law.

Defendant relies primarily on a case from the Eighth Circuit, *Dependahl v. Falstaff Brewing Co.,* 653 F.2d 1208 (8th Cir.), *cert. denied,* 454 U.S. 968 (1981), in which the court held:

> (f)unding implies the existence of a res separate from the ordinary assets of the corporation. All whole-life insurance policies which have a cash value with premiums paid in part by corporate contributions to an insurance firm are funded plans. The employee may look to a *res* separate from the corporation in the event the contingency occurs which triggers the liability of the plan.

*Dependahl,* 653 F.2d at 1214. In *Dependahl,* the plan provided that the named beneficiaries of a covered executive were to receive annuitized payments upon the executive's death, with the employer recovering the annual premiums previously paid, with interest. The court found that, as the employees could look to a separate funding source for payment of the benefits, the plan was funded. In contrast, in *Belsky v. First National Life Ins. Co.,* 818 F.2d 661 (8th Cir. 1987), a salary continuance plan funded by life insurance policies was found to be unfunded where the employee had no rights to the funds made available through the purchase of the insurance policy. The plan in *Belsky* expressly provided that the rights of the employee or beneficiary were "solely those of an unsecured creditor" and that the proceeds of the policy shall be "a general,

unpledged, unrestricted asset . . . ." *Belsky,* 818 F.2d at 663.  The *Belsky* court concluded that "a plan is funded when benefits are paid through a specific insurance policy and unfunded when they are paid from the employer's general assets." *Id.*

Here, it is not disputed that defendant assigned the policy and all his "claims, options, privileges, rights, title and interest therein and thereunder . . . " to the plaintiff (Item 28, Exhs. B, E).  Defendant's only rights were to the disability benefit, the naming of a beneficiary, and "the right to elect any optional mode of settlement permitted by the Policy or allowed by the Insurer."  *Id.*  Additionally, the policy was to be held "as collateral security for any and all liabilities" to the plaintiff.  *Id.*  According to the split-dollar agreement, the plaintiff was to maintain possession of the policies, agreeing to make them available to defendant "from time to time . . . for the purpose of endorsing or filing any change of beneficiary . . ." (Item 28, Exhs. C, F).  Plaintiff had the sole right to collect the proceeds from the insurer upon the death of defendant.  Upon collection of those proceeds, plaintiff was to promptly pay the beneficiary and "retain the remainder of the Policy proceeds."  *Id.*

The court notes that neither the split-dollar agreements nor the assignments contain any specific language stating that the policy proceeds are general assets of the company, that plaintiff's rights in the policy are those of an unsecured creditor, or that the plan is an unfunded top-hat plan.  Nonetheless, considering the language of the assignment and the split-dollar agreements, the court finds that the plan is unfunded. Plaintiff has the sole right to collect the policy proceeds at death or maturity or to surrender the policy for its cash value.  While plaintiff is contractually obligated to pay the agreed upon death benefit to the beneficiary, the beneficiary may not look to a

separate res for payment of the benefits. Once the plaintiff has collected the policy proceeds, those funds become part of the general assets of the plaintiff corporation. Defendant's beneficiary's claim to defendant's share of the policies is a claim against the corporation, not the insurance company. As such, defendant has no rights greater than any unsecured creditor to a specific set of funds that finances the deferred compensation plan. Accordingly, the court finds that the plan is an unfunded "top-hat" plan for purposes of ERISA.

ERISA plans are construed according to federal common law. *Dobson v. Hartford Fin. Servs. Group, Inc.,* 389 F.3d 386, 399 (2d Cir. 2004). Plans are interpreted "as a whole, giving terms their plain meanings." *Fay v. Oxford Health Plan,* 287 F.3d 96, 104 (2d Cir. 2002). According to the plain language of the assignments and split-dollar agreements, defendant was required to make an election within 30 days of the termination of his employment. Having failed to do so, defendant agreed to transfer all of his right, title and interest in the policies to plaintiff, and must execute the necessary documents to facilitate the transfer. Plaintiff's motion for summary judgment on its ERISA causes of action is granted.[2]

Additionally, defendant has alleged a claim under ERISA for plaintiff's failure to provide a summary plan description ("SPD") and other unspecified plan documents. He argues that even if the court grants the plaintiff's motion for summary judgment, his cause of action for failure to provide an SPD must stand. Although the court has

---

[2] As the court has determined that ERISA governs the plans at issue, it is unnecessary to address plaintiff's alternate argument that summary judgment should be granted to plaintiff on state law grounds.

determined that the plan is a top-hat plan, it is nonetheless subject to the disclosure requirements of ERISA. *See Demery,* 216 F.3d at 287. ERISA requires that a summary plan description of any employee benefit plan be furnished to participants and beneficiaries setting forth information such as the name and type of benefit plan, the plan's requirements with respect to eligibility for participation and benefits, and circumstances that may result in disqualification, ineligibility, or denial or loss of benefits. 29 U.S.C. §§ 1021(a), 1022, 1024(b).

In this case, the deferred compensation plan was offered exclusively to the defendant. Plaintiff does not assert that it prepared an SPD or provided one to the defendant. However, "an ERISA claim premised on the complete absence of an SPD also requires a showing of likely prejudice." *Weinreb v. Hospital For Joint Diseases Orthopaedic Institute*, 404 F.3d 167, 171 (2d Cir. 2005); *see also Burke v. Kodak Retirement Income Plan*, 336 F.3d 103 (2d Cir. 2003), *cert. denied,* 540 U.S. 1105 (2004). Defendant was in possession of the relevant documents, and the court will assume his familiarity with them. *See* Item 33, Att. 2, Exhs. A - E. Additionally, defendant was the plaintiff's corporate officer responsible for labor matters, including employee benefits. Accordingly, the defendant cannot show that he was prejudiced by the lack of an SPD, or that he requested documents that were not provided. Defendant has failed to raise a triable issue of fact with regard to the notice and disclosure requirements of ERISA, and his counterclaim is dismissed.

### 3. Defendant's Motion for Summary Judgment

As the court has determined that the plan is an unfunded top-hat plan exempt from ERISA's fiduciary requirements, defendant's motion for summary judgment, seeking a determination that the plan is funded and subject to all ERISA requirements, must be denied.

### 4. Attorneys' Fees

Both parties have requested attorneys' fees pursuant to ERISA in the event that they prevail on the motion for summary judgment.  "In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In determining whether to grant an award of attorneys' fees in ERISA cases, courts in the Second Circuit consider five factors: (1) the degree of the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy an award of attorney's fees; (3) whether an award of fees would deter other persons from acting similarly under like circumstances; (4) the relative merits of the parties' positions; and (5) whether the action conferred a common benefit on a group of pension plan participants. *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 870 (2d Cir. 1987).

The court has considered each of these factors and finds that, as a whole, they do not favor granting attorneys' fees to the plaintiff, the prevailing party in this case.  In the court's view, this was a close case, the defendant did not act in bad faith, and a grant of attorneys' fees would not deter improper conduct in others.  Additionally, the

action has not conferred a common benefit. It is troubling, as defendant has alleged, that the plaintiff would engage in negotiations with defendant regarding amendments to the split-dollar agreements and yet fail to discuss the consequences of defendant's retirement on those policies. On the other hand, defendant was a well-compensated executive with legal and financial representation who should have been aware of his rights and responsibilities under the agreements. In any event, the circumstances do not justify a grant of attorneys' fees.

### 5. State Law Claims

As there are no longer any federal claims in this action, it is within the court's discretion whether to exercise supplemental jurisdiction over the plaintiff's state law contract claim regarding the breach of the MSA and defendant's counterclaim regarding the same subject. *See Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262–63 (2d Cir. 2006). "It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Id.* at 262. Accordingly, the court declines to exercise supplemental jurisdiction over these claims.

## CONCLUSION

The plaintiff's motion for summary judgment is granted, and the defendant's cross motion is denied. Defendant's counterclaims pursuant to ERISA are dismissed, and judgment is granted to plaintiff declaring that it has all rights, title, and interest to the life insurance policies pursuant to the split-dollar agreements, and defendant must execute the necessary documents to effect the transfer. As there are no remaining federal claims, the court declines to exercise supplemental jurisdiction over plaintiff's remaining breach of contract claim and defendant's counterclaim based on a breach of the MSA. These state law claims are dismissed without prejudice. The parties' request for attorney's fees is denied.

So ordered.

\_\_\_\_\_\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated: August   22, 2011
p:\opinions\06-546.july252011